W. Walley, Inc. v. Commissioner.
W. Walley, Inc. v. Commissioner
Docket No. 13499.
United States Tax Court
1948 Tax Ct. Memo LEXIS 236; 7 T.C.M. (CCH) 137; T.C.M. (RIA) 48033; March 9, 1948
*236 Michael Kurz, Esq., 122 E. 42nd St., New York, N. Y., for the petitioner. Sheldon Ekman, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined a deficiency in income tax for the fiscal year ended September 30, 1943, in the amount of $884.42. The question presented is as to whether or not the net amount of $14,700 received by petitioner in the taxable year in settlement of a lawsuit constitutes taxable income. Findings of Fact The facts are all stipulated and are adopted as stipulated. Petitioner is a corporation with principal offices in New York City. Its return for the taxable year involved was filed with the collector of internal revenue for the third district of New York. Marks J. Waldbaum and Janet S. Wolf each owned fifty per cent of petitioner's common stock. During the taxable year petitioner received a net amount of $14,700 as a compromise settlement of an action filed in December 1942 against James McCreery & Co. for damages growing out of a breach of contract and injury to good will. The taxpayer, in its return, reported this amount as nontaxable income in its analysis of earned surplus *237 and undivided profits. It described the amount as "damages to good will." Since September 1935 petitioner has been engaged in the business of issuing credit cards to individuals having acceptable credit ratings. It also entered into contracts with a number of retail stores and provided therein that all credit sales made by said retailers to the holders of the aforesaid credit cards should be invoiced to petitioner. Petitioner then paid these invoices less ten per cent and billed the gross amount of the cardholder who had made the purchases. The business prospered and in 1942 involved annual purchases by cardholders in excess of $1,000,000. James McCreery & Co. was one of the department stores with which petitioner had such contractual arrangements. However, in May 1942 McCreery discontinued recognizing credit cards of petitioner and began selling on credit directly to the customers which petitioner had theretofore served. Petitioner brought an action against McCreery, alleging: "* * * that the defendant has unlawfully obtained access to the names and addresses of plaintiff's customers and clientele, and to the lists and compilation thereof, and has, without plaintiff's consent, *238 made use of the aforementioned names and addresses, compilation and lists for its, the defendant's own benefit and advantage, in that by letters and other means, defendant has requested plaintiff's customers to discontinue doing business and making purchases through the plaintiff or upon its credit, and by opening charge accounts for such customers directly with the defendant, and by soliciting directly the opening of such charge accounts; * * *." Petitioner further alleged that it had sustained "* * * great loss and damage by virtue of the acts of the defendant herein as aforementioned; that the plaintiff has lost customers through the acts of the defendant; that plaintiff has been prevented and deterred from expanding and increasing its business as it otherwise could and would have done but for the actions of the defendant; that the plaintiff has lost large amounts of trade and profits by reason of defendant's acts; that the defendant, by its actions, intended to gain and has gained for itself the aforesaid names, customers and trade of plaintiff's customers, as well as the profits and good will of the plaintiff, all to the plaintiff's irreparable damage, and defendant continues *239 so to do at the date hereof." and demanded the following relief: "(1) an injunction against McCreery to prevent its use of petitioner's list of customers and its solicitation of their business; "(2) the accounting for and payment over to petitioner by McCreery of "all the profits realized by it upon sales made by it to customers of the plaintiff"; "(3) $250,000 damages; "(4) 'such other and further relief as may be just,' together with costs." In September 1943 the above action was settled by the payment of $21,000 by McCreery to petitioner, out of which petitioner paid its legal and other expenses and received $14,700 net. In the stipulation entered into by counsel providing for a settlement and for the subsequent general release, the following provisions were included: "General releases as approved by respective counsel shall be exchanged both between the parties hereto and between James McCreery & Company and Marks J. Waldbaum individually. It is understood that such general releases are intended not only in settlement of the present action but in release of any and all claims which either party thereto may have against the other from any cause up to the date hereof. *240 " The aforesaid Marks J. Waldbaum did not, individually, assert any claim against James McCreery and Company at any time, and he received no portion of the proceeds of settlement of the said suit by petitioner against James McCreery & Co.
Opinion The petitioner contends that the money received by it at the time of the settlement of the suit for damages was in compensation for damages to good will and was in restoration of destroyed capital. The Commissioner asserts that the amount received was in lieu of profits which the taxpayer would have received if its contract with McCreery had not been broken; that if any of it represented damages to good will, the taxpayer has not shown the amount thereof; and that whatever amount, if any, is allocable to damages to good will, would constitute a capital gain since petitioner carries no good will account on its books and has not shown that its good will, if any, has a cost basis. The parties have agreed in briefs that the taxpayer carried no good will account on its books. Petitioner's basic contention is that the money which it received in settlement of this litigation is not income within the meaning of the Sixteenth Amendment to the *241 Constitution of the United States or within the definition of income as set forth in Eisner v. Macomber, 252 U.S. 189, wherein income is defined as: "The gain derived from capital, from labor, or from both combined, provided it be understood to include profit gained through sale or conversion of capital assets." Petitioner then cites a number of cases involving types of income which the courts have held not to constitute taxable income and in which the definition of income in the Macomber case is followed. However, petitioner lays particular emphasis on the case of Farmers' and Merchants' Bank v. Commissioner, 59 Fed. (2d)912, which it declares to be "on all fours with the case at bar and which has not only never been repudiated but has been repeatedly cited with approval." This decision involved the taxability of an amount received by the taxpayer in compromise of an action brought against the Federal Reserve Bank for damages to petitioner's business growing out of the unauthorized manner in which the Federal Reserve Bank presented checks to petitioner for payment, which checks had been cashed by member banks of the Federal Reserve System. Petitioner *242 bank was not a member bank of the Federal Reserve System and in the action against the Federal Reserve Bank it alleged that it had lost deposits and depositors and had failed to gain new ones; that it had been unable to grow and develop new business; and it had been permanently injured in reputation, standing, growth and prosperity. Its cashier testified in the hearing before the Board of Tax Appeals that the loss of earnings could not be definitely determined and that because thereof the bank had failed to demand compensation for lost profits, either actual or anticipated. The Board of Tax Appeals decided that at least some portion of the amount received in settlement represented earnings but that petitioner had failed to show what portion did not. The Court of Appeals reversed the holding of the Board of Tax Appeals and held that the amount received was compensation for damaged good will and that since it could not be assumed that the amount received was in excess of the damage actually sustained, there was no taxable income involved. There are two very essential differences between the Farmers and Merchants Bank case and the case at bar in that the income received by the taxpayer *243 in the former case resulted from an action based wholly in tort and in which a recovery for profits was not attempted. In the case at bar the taxpayer's income resulted from the settlement of an action for breach of contract and in which a claim for lost profits was specifically set forth in the petition. We are unable to accept petitioner's contention that the two cases are on all fours. It is rather our opinion that the case of Durkee v. Commissioner, 162 Fed. (2d) 184, furnishes considerable help in the decision of the issues involved herein. That case also pertains to the taxability of income received in settlement of litigation against a number of individuals who had conspired to injure the taxpayer's business and in which the taxpayer, who had brought action as an individual, signed a release in which he released his claim as an individual, as a member of a partnership which had been dissolved, and as an agent of an existing corporation, all three of which entities had been affected by the conspiracy involved in the litigation. The appellate court held that the litigation by Durkee was essentially for the injury to the good will of his business and that the allegations *244 in the petition as to profits were only an evidential factor in determining the actual loss and not an independent basis for recovery. In the opinion the court says: "It is contended that it was the duty of the petitioner to prove either that the entire recovery was nontaxable income or the proper allocation between taxable income and nontaxable income, and that failure to meet this burden requires that the Commissioner's ruling be upheld. * * * Such is the rule where the ruling is not arbitrary or excessive and has support in the evidence." In the case at bar the petitioner expressly stated in his petition against McCreery that he was seeking lost profits as well as damages to good will. The briefs of both parties have referred to the case of W. Walley, Inc. v. Saks & Co., 41 N.Y.S. (2d) 739, and agree that that decision is a report of an action by the petitioner herein against one of its customers growing out of the same type of contract as that involved in the McCreery litigation and involving facts on all fours with the McCreery litigation. In that case the trial court had awarded Walley, Inc., a judgment generally and entered an order "* * * that a referee be *245 appointed to take an account as to the loss or damage sustained by plaintiff and that defendant account to plaintiff for all damages sustained by it and profits lost to it or gained by defendant and produce all records of sales made by it to any of plaintiff's customers, and on the coming in of the referee's report and its confirmation, plaintiff is allowed recovery of the amount of its damages." From the above order, as well as the express wording of the petition in the McCreery case, it would seem to be evident that W. Walley, Inc., was seeking recovery from both lost profits and damaged good will. Yet it has introduced no evidence in this record as to what customers, if any, it lost by virtue of McCreery's action, nor has it indicated the terms of the contract between it and McCreery providing for a cancellation thereof. If the contract were cancellable without notice then the amount of profits lost by the cancellation itself would be negligible. If, however, the contract provided for cancellation after six months or one year's notice, the lost profits might be considerable. With no evidence as to the loss of any customers by petitioner, this Court could only guess at the extent *246 of the injury to plaintiff's good will and with no evidence concerning the terms of the contract we are likewise in a position to only guess at the measure of loss of profits. We believe under the circumstances that any just appraisal of the ruling of the Commissioner in this case that all of the recovery represented lost profits was "not arbitrary or excessive and has support in the evidence." In Armstrong Knitting Mills, 19 B.T.A. 318, the taxpayer had settled two suits, each for $50,000, one for a breach of contract with injury to good will and one for unfair competition and injury to income. The taxpayer settled both cases and issued a release for $15,000. The Commissioner determined that the amount was taxable income. The Board of Tax Appeals sustained the Commissioner and in that opinion said: "The amount in question was paid to the petitioner in compromise and settlement of two suits, and there is no evidence to indicate in what proportion the amount could be allocated between the actions. Also, there is no evidence to establish the specific purpose for which the money was paid, other than that it was paid as a lump sum in compromise and settlement of the litigation. *247 Whether the amount represented damages for wrongful injury to the petitioner's good will, or whether it represented damages for loss of profits, or indeed whether the amount was simply paid by the defendants to avoid further expense and harassment resulting from long continued litigation, does not definitely appear." In the case at bar the amount was received in compromise of an action to account for profits and for $250,000 damages. The petitioner in the action relied for recovery upon lost profits and injured good will. The actual release given by the taxpayer has not been introduced in evidence but the agreement for settlement signed by counsel was of a general character covering all causes of action. This was not a case where the taxpayer neglected to introduce essential evidence at an oral hearing and where oversight and surprise might have been a factor. It was a case submitted on a stipulated statement after mature consideration where it is certainly to be presumed that all of the evidence available was before the Court and it is our conclusion that there is not sufficient evidence in the record to overcome the presumption of the correctness of the Commissioner's determination. *248 Decision will be entered for the respondent.